UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 19-118-WBV-DMD |
| TRAVIS LAMONT MURRAY | SECTION: D (3) |

### ORDER AND REASONS

Before the Court is a Motion to Suppress DNA Evidence and Request for Evidentiary Hearing (the "Motion to Suppress"), filed by defendant, Travis Lamont Murray.[1] The Government opposes the Motion.[2] The Court held an evidentiary hearing on the Motion to Suppress on September 2, 2020. After careful consideration of the parties' memoranda, the oral arguments made and witness testimony provided during the evidentiary hearing, and the applicable law, the Motion is **DENIED.**

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2019, the Government filed an Indictment in this Court, alleging that Travis Lamont Murray ("Defendant") committed one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(a) & 2361(a)(2), and one count of sexual abuse in violation of 18 U.S.C. §§ 2242(1) & 3261(a)(2).[3] The Indictment alleges that on or about May 25, 2004, Defendant sexually assaulted A.T. while he was a member of the United States Navy stationed at a United States Naval Base in Yokosuka, Japan.[4]

---

[1] R. Doc. 47.
[2] R. Doc. 56.
[3] R. Doc. 1.
[4] *Id.*

A.T. was also a member of the United States Navy and stationed at the same United States Naval Base in Yokosuka, Japan, but on a different ship. A.T. was unable to identify her attacker, but she reported the incident shortly after it allegedly occurred. A.T. was transported to the nearby United States Naval Hospital in Yokosuka, where a nurse conducted a sexual assault examination and collected semen from inside the victim. In August 2005, the Naval Criminal Investigative Service ("NCIS") forwarded the sexual assault kit containing the sample collected from the victim to the United States Army Criminal Investigation Laboratory in Georgia.[5] During her review of the sexual assault kit, Dr. Diana Williams, a DNA expert, identified the DNA profiles of three different persons–the victim, the victim's consensual sexual partner, and the unknown assailant.[6] The DNA profile of the unknown assailant was entered into the FBI's Combined DNA Index System ("CODIS").[7]

According to the Government, Defendant was arrested in 2018 in Jefferson Parish, Louisiana, during which the State of Louisiana obtained a sample of Defendant's DNA and uploaded it to CODIS.[8] This resulted in a match between Defendant's DNA and the DNA profile of the assailant identified by Dr. Williams in 2005.[9] A subsequent Fed. R. Crim. P. 41 search warrant for Defendant's DNA was executed in June 2019. Based upon the DNA testing, Dr. Williams confirmed that the sperm recovered by the sexual assault nurse examiner in 2004 originated from

---

[5] R. Doc. 56 at pp. 2-3 (*citing* R. Doc. 31-26 at p. 2).
[6] R. Doc. 56 at p. 3 (*citing* R. Doc. 31-23 at p. 7); R. Doc. 47-1 at p. 2.
[7] R. Doc. 47-1 at p. 2; R. Doc. 56 at p. 3.
[8] R. Doc. 56 at p. 3.
[9] *Id.*

2

Defendant.[10]  The Government asserts that the frequency of occurrence of Defendant's DNA profile among unrelated individuals selected at random from the United States population is estimated to be 1 in 7.4 quadrillion for black individuals.[11]

Defendant alleges that in March 2009, the evidence collected from the victim, including the DNA swabs contained in A.T.'s Sexual Assault Forensic Examination ("SAFE") kit, was destroyed, in direct violation of NCIS protocol for the preservation of evidence.[12]  Defendant argues that the destruction of the only DNA evidence in this case is significant because forensic science has advanced significantly from 2005 to 2019.  Defendant asserts that the DNA testing available today uses more advanced and discriminating testing theories, which allows for the testing of nearly twice as many locations on the genetic chain than could be tested in 2005.[13]  Defendant complains that he is unable to use this advanced DNA testing technology to re-test the DNA evidence, denying him the opportunity to defend himself against the accusations in the Indictment.

The Government asserts that in 2009, as part of an effort to organize the NCIS evidence rooms in Yokosuka, Japan, NCIS Special Agent Robin Kerr,[14] as evidence custodian for the NCIS Yosuka Field Office, destroyed the sexual assault kit that contained the original swabs from 2004.[15]  The Government notes that Agent Kerr

---

[10] *Id.*
[11] *Id.* (*citing* R. Doc. 31-23 at p. 7).
[12] R. Doc. 47-1 at p. 2.
[13] *Id.*
[14] Kerr testified during the September 2, 2020 evidentiary hearing that she retired in 2014.  *See* September 2, 2020 Hearing Transcript.
[15] R. Doc. 56 at p. 4 (*citing* R. Doc. 56-1).

returned or destroyed approximately 185 items of evidence from dozens of cases during this same reorganization of the evidence room. The Government asserts that Agent Kerr destroyed evidence related to A.T.'s sexual assault because the incident had occurred years earlier, NCIS had closed the case, and no suspect had been identified.[16] Agent Kerr's Declaration, which was thereafter confirmed by her testimony at the hearing, states that she did not single out this case and that she was never involved in the investigation of the sexual assault of this case.[17] The Government points out that, at the time the evidence was destroyed in 2009, Defendant had not been identified as the assailant. Defendant's arrest and subsequent identification did not occur until some nine years later in 2019. The Government argues that Agent Kerr did not act in bad faith when she destroyed the sexual assault kit, and that she did not destroy it to conceal exculpatory evidence from Defendant.[18]

On February 28, 2020, Defendant filed the instant Motion to Suppress, asking the Court to suppress the introduction of DNA evidence because the Government's destruction of the original DNA evidence deprived Defendant of the opportunity to independently test the evidence using modern DNA testing technology and to prepare a full defense in this case.[19] Defendant asserts that the Due Process Clause of the Fourteenth Amendment requires the government to preserve potentially exculpatory

---

[16] R. Doc. 56 at p. 4 (*citing* R. Doc. 56-1).
[17] R. Doc. 56-1.
[18] R. Doc. 56 at p. 4.
[19] R. Doc. 47.

evidence on behalf of defendants.[20] Defendant argues that the government's failure to preserve material, exculpatory evidence violates a defendant's due process rights, regardless of whether the government acted in good or bad faith.[21] Defendant claims that materiality requires an exculpatory value that was apparent before the evidence was destroyed, and which was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.[22]

Defendant argues that the destroyed DNA evidence was clearly material and exculpatory in this case.[23] Defendant asserts that the evidence was material because it is critical to the prosecution's case, since A.T. did not identify Defendant as her assailant. Defendant argues that if the DNA sample had been preserved and could be retested, these proceedings could be very different, and may never have been initiated.[24] Defendant argues that the destroyed DNA evidence also had exculpatory value at the time it was destroyed because two male profiles were developed from the sample taken during A.T.'s examination, and, "The presence of at least two male profiles in the sample is clearly exculpatory, making the government's destruction of the evidence an even more apparent Due Process violation."[25] Defendant claims that the current standard for DNA testing, based on FBI protocols, allows for the testing of 22 specific locations on the genetic chain, while DNA testing in 2005 only tested 13

---

[20] R. Doc. 47-1 at p. 2 (citing *California v. Trombetta*, 467 U.S. 479, 481, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).
[21] R. Doc. 47-1 at p. 3 (citing *United States v. McNealy*, 625 F.3d 858, 869 (5th Cir. 2010)).
[22] R. Doc. 47-1 at p. 3 (citing *Bower v. Quarterman*, 497 F.3d 459, 476 (5th Cir. 2007)).
[23] R. Doc. 47-1 at p. 4.
[24] *Id.*
[25] *Id.*

locations on the genetic chain.[26] Defendant also claims that the testing method used by labs in 2005 for analyzing DNA evidence, called CPI, has since been criticized and replaced due to its troubling subjective nature, which has led to altered and/or inaccurate results in other cases.[27] Defendant asserts that if the DNA evidence had been preserved in this case, Defendant would have the opportunity to re-test the samples using modern technology, the results of which could clearly be favorable to Defendant and show that he was not the contributor of the DNA, or that there was no identifiable contributor.[28]

Finally, Defendant argues that although a showing of bad faith is not required to establish a Due Process Clause violation, he can demonstrate bad faith because the destruction of the DNA sample in this case "was a violation of protocol."[29] Defendant asserts that, "bad faith should be presumed based on the government's failure to follow proper procedures without any explanation and its subsequent attempt to use its own data from the destroyed evidence against Mr. Murray."[30] As such, Defendant asserts the DNA evidence must be suppressed. Alternatively, if the Court does not determine that a due process violation has occurred, Defendant asserts that the Court may issue remedial jury instructions or other sanctions, as necessary, based on the destruction of evidence.[31]

---

[26] *Id.*
[27] *Id.* at p. 5 (citations omitted).
[28] *Id.*
[29] *Id.* at p. 6.
[30] *Id.*
[31] *Id.* at p. 3 (citing *United States v. Sivilla*, 714 F.3d 1168, 1173-74 (9th Cir. 2013)).

The Government opposes the Motion to Suppress, arguing that suppression is only permitted in very limited circumstances, none of which apply here.[32] Citing the same case relied upon by Defendant, the Government asserts that under *California v. Trombetta*, the government violates due process when: (1) it destroys evidence whose exculpatory significance is apparent before destruction; and (2) the defendant remains unable to obtain comparable evidence by other reasonably available means.[33] The Government asserts that the Supreme Court later held in *Arizona v. Youngblood* that if the exculpatory value of the evidence is undetermined at the time it was destroyed, but may be "potentially useful" to the defense, a defendant must show that the government acted with bad faith in destroying the evidence to show a violation of due process.[34] The Government contends that *Youngblood* limits the government's obligation to preserve evidence to those cases where "the police themselves by their conduct indicate that evidence could form a basis for exonerating the defendant."[35] The Government claims the Supreme Court reinforced this holding in *Illinois v. Fisher*, when it held that the failure to preserve "potentially useful" evidence does not violate due process unless a criminal defendant can show bad faith on the part of the police.[36]

---

[32] R. Doc. 56.
[33] *Id.* at p. 4 (citing *Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).
[34] R. Doc. 56 at p. 5 (citing *Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).
[35] R. Doc. 56 at p. 5 (quoting *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333) (internal quotation marks omitted).
[36] R. Doc. 56 at p. 5 (citing *Fisher*, 540 U.S. 544, 547-48, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004)).

The Government notes that Defendant argues the evidence was exculpatory based upon: (1) the presence of two male profiles; and (2) the fact that current DNA kits compare additional loci in the genetic chain.[37] The Government maintains that both arguments lack merit. The Government asserts that Defendant's argument regarding the two male profiles is misleading because it omits the critical fact that one of the DNA profiles obtained from the sexual assault examination belonged to the victim's consensual partner.[38] The Government claims this omission of the fact that one of the profiles belonged to the victim's consensual partner implies that the second sperm contributor was an unknown person and possibly the assailant. Instead of casting doubt on the accuracy of the testing, the Government argues the fact that three DNA profiles were recovered (belonging to the victim, her consensual partner and the unknown assailant) bolsters the validity of the DNA testing and discredits Defendant's claim that the destroyed evidence was exculpatory or even potentially helpful.[39] The Government claims that there is nothing exculpatory or unusual about the fact that multiple DNA profiles were recovered during the sexual assault examination.

The Government likewise asserts that the destroyed evidence was not exculpatory because the occurrence of Defendant's DNA profile comparing the 13 loci from 2005 is estimated to be 1 in 7.4 quadrillion for black individuals.[40] The Government points out that Defendant offers no evidence that comparing DNA at

---

[37] R. Doc. 56 at p. 6 (*citing* R. Doc. 31-23 at p. 6).
[38] R. Doc. 56 at p. 6 (*citing* R. Docs. 31-26 & 31-23).
[39] R. Doc. 56 at p. 6.
[40] *Id.* at p. 7.

additional loci would have revealed someone other than Defendant perpetrated the sexual assault. The Government also asserts that under *Youngblood*, the mere speculation about what additional testing may have revealed is not sufficient to characterize the evidence as "exculpatory."[41] However, even if the evidence was exculpatory, the Government argues that Defendant can obtain comparable evidence by other reasonably available means.[42] The Government claims that impeachment of government witnesses and attacking the process that led to the destruction of evidence hold a significant advantage over use of the specimen itself because Defendant then avoids the very real risk that the specimen would have corroborated the original results and provided further inculpatory evidence.[43] Because Defendant has other comparable means to challenge the DNA evidence, the Government argues that Defendant cannot meet the requirements for the suppression of material, exculpatory evidence under *Trombetta*.[44]

Although the destroyed evidence was not exculpatory, the Government asserts that it falls into the category of "potentially useful," which requires Defendant to prove that it was destroyed in bad faith.[45] The Government asserts that bad faith can be shown when law enforcement agents act with "official animus" toward the defendants or act with "a conscious effort to suppress exculpatory evidence."[46] The

---

[41] *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 56, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)).
[42] R. Doc. 56 at pp. 10-11 (citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).
[43] R. Doc. 56 at p.11 (citing *Jones v. McCaughtry*, 775 F. Supp. 309, 319 (W.D. Wis. 1991), *affirmed*, 965 F.2d 473 (7th Cir. 1992)).
[44] R. Doc. 56 at p. 11 (citing *Trombetta*, 467 U.S. 479, 104 S.Ct. 2528).
[45] R. Doc. 56 at p. 8 (citations omitted).
[46] R. Doc. 56 at p. 8 (citing *Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528).

Government argues that there is no evidence that Agent Kerr acted in bad faith when she destroyed the evidence in 2009 as part of an effort to organize the NCIS evidence rooms in Yokosuka, Japan. The Government claims that Agent Kerr destroyed the sexual assault kit that contained the original swabs from 2004 based upon the age of the case, the fact that the case was closed, and the fact that no suspect had been developed.[47] The Government points out that Agent Kerr also destroyed evidence from other cases and did not single out the evidence in this case for destruction.[48] The Government asserts that it is undisputed that Agent Kerr could not have acted with "official animus" toward Defendant because DNA testing did not link Defendant to the sexual assault until 2018–nine years after the evidence was destroyed. The Government claims that Agent Kerr was not aware that the evidence contained any exculpatory value, and that it is undisputed that the NCIS case was closed in 2007 and that there was no pending prosecution or investigation.[49] Although Defendant alleges that the destruction of evidence violated "protocol," the Government asserts that the two cases cited by Defendant for this position found no bad faith, even where evidence was destroyed either after the government promised to make the evidence available to the defendant or after the defendant asked the government to return the evidence.[50] The Government argues that negligence or even gross negligence by a government agent is insufficient to establish bad faith.[51]

---

[47] R. Doc. 56 at p.8.
[48] *Id.* at pp. 7-8 (*citing* R. Doc. 56-1).
[49] R. Doc. 56 at p. 8 (*citing* R. Doc. 56-1 at p. 2).
[50] R. Doc. 56 at p. 9 (citing *United States v. Hidalgo*, 385 Fed.Appx. 372 (5th Cir. 2010); *United States v. McNealy*, 625 F.3d 858, 869 (5th Cir. 2010)).
[51] R. Doc. 56 at pp. 9-10 (citations omitted).

## II.     LEGAL STANDARD

The parties agree that the leading authority on the issue of suppression and the destruction of evidence by the government is *California v. Trombetta*.[52] There, the Supreme Court held that the government violates a defendant's due process rights when: (1) it destroys evidence whose exculpatory value was apparent before the evidence was destroyed; and (2) the defendant is unable to obtain comparable evidence by other reasonably available means.[53] According to Supreme Court and Fifth Circuit authority, "Failure to preserve material exculpatory evidence violates due process rights irrespective of whether the government acted in good or bad faith."[54] Additionally, "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[55]

However, if the exculpatory value of the evidence is undetermined at the time it was destroyed, but the evidence may be "potentially useful" to the defense, a defendant must show that the government acted with bad faith in destroying the evidence to establish a due process violation.[56] In *Arizona v. Youngblood*, the Supreme Court explained that this "stems from our unwillingness to read the

---

[52] 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).
[53] 467 U.S. at 489, 104 S.Ct. at 2534.
[54] *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citing *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004)).
[55] *Bower v. Quarterman*, 497 F.3d 459, 476 (5th Cir. 2007) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)) (internal quotation marks omitted).
[56] *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337,102 L.Ed.2d 281 (1988)).

11

'fundamental fairness' requirement of the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution."[57] The Supreme Court has made clear that, "the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." [58] "In sum, impermissibly withheld evidence must be either (1) material and exculpatory or (2) only potentially useful, in combination with a showing of bad faith on the part of the government."[59]

### III. ANALYSIS

After reviewing the evidence, the Court finds that Defendant has not shown that the introduction of DNA evidence in this case would violate his rights under the Due Process Clause, thereby warranting suppression of the evidence. Defendant claims that the DNA evidence must be suppressed because the Government, through Agent Kerr, destroyed the DNA swabs contained in A.T.'s sexual assault kit in 2009, prohibiting Defendant from independently testing the DNA with modern DNA testing technology. Defendant argues that suppression is appropriate under *California v. Trombetta*[60] because the destroyed DNA evidence was material and

---

[57] 488 U.S. at 58, 109 S.Ct. at 337 (internal citation omitted).
[58] *Fisher*, 540 U.S. at 549, 124 S.Ct. at 1203 (quoting *Youngblood*, 488 U.S. at 57-58, 109 S.Ct. 333).
[59] *Bower v. Quarterman*, 497 F.3d 459, 476-77 (5th Cir. 2007) (citing *Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004)).
[60] 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

12

exculpatory at the time it was destroyed in 2009. Defendant claims the evidence is material because it is critical to the Government's case. The Government does not dispute that the destroyed evidence is material. Instead, the parties dispute whether the evidence was exculpatory at the time of its destruction.

Defendant claims that the evidence had exculpatory value at the time it was destroyed because two male profiles were developed from the DNA swabs and, "The presence of at least two male profiles in the sample is clearly exculpatory, making the government's destruction of the evidence an even more apparent Due Process violation."[61] Defendant also claims that the destroyed evidence was exculpatory because he is unable to use more modern technology to independently test the DNA evidence and develop additional defense theories.[62] The Court finds Defendant's statement about the presence "of at least two male profiles" present, for the premise that the sample was exculpatory, is misleading. The evidence presented during the hearing clearly established that the samples included the DNA profiles of the victim, her consensual partner, and the unknown assailant. Defendant fails to mention that the second male profile developed from A.T.'s sexual assault kit was identified as A.T.'s consensual sexual partner.[63] The Court, therefore, rejects Defendant's insinuation that the second male profile was an unknown person and possibly the assailant, which is contrary to the evidence before the Court.

---

[61] R. Doc. 47-1 at p. 4
[62] *Id.*
[63] R. Doc. 31-23 at p. 7, ¶ 18.

Additionally, the evidence before the Court shows that the frequency of occurrence of the unknown male profile that matches Defendant's DNA profile among unrelated individuals selected at random from the United States population, is estimated to be 1 in 7.4 quadrillion for black individuals.[64] During the evidentiary hearing, Dr. Diana Williams testified regarding the DNA testing used to obtain these results in 2005. The parties stipulated at the hearing that Dr. Williams, a forensic scientist, is an expert in the testing of DNA evidence.[65] Dr. Williams testified that although there have been upgrades in the instrumentation used to test DNA since 2005, and that 21 loci can now be tested instead of only 13 loci,[66] testing additional loci is helpful with low-level samples and complex mixtures, where the DNA of more than two individuals is present.[67] Dr. Williams testified that the destroyed DNA in this case was not a complex mixture, so the new testing method would not have assisted in its testing.[68] Dr. Williams explained that the destroyed DNA in this case was a mixture of two individuals, with a clear major contributor who contributed much more DNA than the other individual. Dr. Williams confirmed that the DNA from the major contributor matches the DNA from Defendant.[69] She confirmed that this match was 1 in 7.4 quadrillion among black males. Dr. Williams further testified that, in preparation for this hearing, she conducted a literature search and reached out to the manufacturer of the DNA testing kit used in 2005, which manufacturer is

---

[64] *Id* at ¶ 20.
[65] *See* September 2, 2020 Evidentiary Hearing Transcript.
[66] *Id*.
[67] *Id*.
[68] *Id*.
[69] *Id*.

the same as the one currently in use, and was unable to find any reports of an individual who matched at the 13 core loci used in 2005, but did not match the additional loci that are tested using modern DNA testing.[70] Further, Defendant has offered no evidence indicating that comparing additional genetic locations using modern DNA testing would have revealed someone other than Defendant perpetrated the sexual assault. As such, Defendant has failed to show that the destroyed evidence was exculpatory at the time of its destruction.

Nonetheless, the Supreme Court has recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."[71] The Supreme Court has instructed that, "[T]he failure to preserve this 'potentially useful evidence' does not violate due process '*unless a criminal defendant can show bad faith on the part of the police*.'"[72] The Supreme Court explained that:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, *i.e.*, those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.[73]

---

[70] *Id.* The Court notes that Defendant asserts in his Motion to Suppress that the destroyed DNA was tested in 2005 using the "CPI" method, which has since been criticized and replaced due to its troubling subjective nature. R. Doc. 47-1 at p. 5. Dr. Williams testified at the evidentiary hearing that she did not use CPI when she tested the DNA evidence in 2005. *See* September 2, 2020 Evidentiary Hearing Transcript.
[71] *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S.Ct. 1200, 1202, 157 L.Ed.2d 1060 (2004) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)) (internal quotation marks omitted).
[72] *Fisher*, 540 U.S. at 547-48, 124 S.Ct. at 1202 (quoting *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333) (emphasis added by *Fisher*).
[73] *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337.

Like in *Illinois v. Fisher*, this Court finds that the destroyed DNA evidence in this case was "potentially useful evidence" at the time of its destruction because Defendant could hope that, had the evidence been preserved, additional DNA testing would have exonerated him.[74] Pursuant to the foregoing Supreme Court authority, the Fifth Circuit has recognized that, "[F]ailure to preserve merely potentially useful evidence does not constitute a denial of due process absent a showing of bad faith."[75] Defendant argues that the destruction of the DNA samples was a violation of protocol and that, "bad faith should be presumed based on the government's failure to follow proper procedures without any explanation and its subsequent attempt to use its own data from the destroyed evidence against Mr. Murray."[76] During the evidentiary hearing, Defendant filed into evidence a chapter from a policy handbook issued by NCIS, stating that certain evidence must be retained for 50 years, including sexual assault kits and related evidence from unresolved rape investigation cases.[77]

The Government submitted the Declaration and testimony of Robin Kerr, who was the evidence custodian for the NCIS Yokosuka Field Office in March 2009, and responsible for maintaining the organization of the evidence rooms so that evidence could be easily located when needed.[78] Agent Kerr testified that she retired from NCIS in 2014 after working as an NCIS Special Agent for 29 years.[79] Agent Kerr

---

[74] *Fisher*, 540 U.S. at 548, 124 S.Ct. at 1202.
[75] *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citations omitted).
[76] R. Doc. 47-1 at p. 6.
[77] *See* September 2, 2020 Evidentiary Hearing Transcript, Defense Exhibit 1.
[78] R. Doc. 56-1 at p. 1, ¶¶ 2, 4; *See* September 2, 2020 Evidentiary Hearing Transcript.
[79] *See* September 2, 2020 Evidentiary Hearing Transcript.

16

testified that she was assigned as evidence custodian and, as such, that she reviewed NCIS closed cases and returned or destroyed evidence that she believed was no longer needed.[80] As part of that review, Agent Kerr destroyed or returned approximately 185 items of evidence from dozens of closed cases.[81] Agent Kerr further testified that, as part of her efforts to organize the NCIS evidence rooms, she made the decision to destroy the sexual assault kit and the victim's underwear in March 2009 because: (1) the case was closed in May 2007 and there was no pending investigation or prosecution; (2) NCIS had not identified a suspect; and (3) the case was from 2004 and the lead Special Agent in charge of the investigation was no longer stationed in the Yokosuka Office.[82] Agent Kerr testified that she did not consult with the lead Special Agent who handled the investigation before destroying and returning the evidence, and that she was never involved in the investigation of the sexual assault of A.T. that occurred in May 2004.[83] Agent Kerr stated that she made the decision to dispose of the evidence because there appeared to be no reason to keep it.[84] Agent Kerr also testified that the destruction of evidence was a mistake.[85]

Defendant has not presented the Court with any evidence to show that Agent Kerr destroyed the DNA evidence in 2009 in bad faith. Like the Supreme Court in *California v. Trombetta*, this Court concludes that Agent Kerr did not destroy A.T.'s sexual assault kit in "a calculated effort to circumvent the disclosure requirements

---

[80] R. Doc. 56-1 at p. 2, ¶ 6; *See* September 2, 2020 Evidentiary Hearing Transcript.
[81] R. Doc. 56-1 at p. 2, ¶ 6; *See* September 2, 2020 Evidentiary Hearing Transcript.
[82] R. Doc. 56-1 at p. 2, ¶¶ 8, 10; *See* September 2, 2020 Evidentiary Hearing Transcript.
[83] R. Doc. 56-1 at ¶ 11; *See* September 2, 2020 Evidentiary Hearing Transcript.
[84] *See* September 2, 2020 Evidentiary Hearing Transcript.
[85] *Id.*

established by *Brady v. Maryland* and its progeny."[86] The Court finds that Agent Kerr destroyed the evidence in accordance with what she believed to be her duty, as the evidence custodian for the NCIS Yokosuka Field Office, to maintain the organization of the evidence rooms and to discard evidence that was no longer needed.[87] This finding is bolstered by the fact that Agent Kerr testified that she also destroyed evidence from other cases, and did not single out the evidence in this case for destruction.[88] Agent Kerr's testimony regarding these events was uncontradicted. Further, the Court found her to be a credible witness when she testified regarding her motives in organizing the evidence room as part of her assigned duties. Defense counsel conceded during the evidentiary hearing that Defendant has not alleged that Agent Kerr acted with animus or malice towards Defendant."[89] The defense argued, however, that Agent Kerr was negligent, or perhaps grossly negligent, for failing to preserve the evidence in accordance with an internal policy regarding the retention of evidence in unsolved sexual assault cases.[90] The Court finds that, even if Agent Kerr negligently destroyed the DNA evidence in this case, negligence does not constitute evidence of bad faith.[91]

Because Defendant has failed to show that the "potentially useful" DNA evidence was destroyed by the Government in bad faith, the Court concludes that the

---

[86] 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (citing *Brady*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).
[87] R. Doc. 56-1 at p. 1, ¶¶ 2, 4.
[88] *Id.* at p. 2, ¶ 6; *See* September 2, 2020 Evidentiary Hearing Transcript.
[89] *See* September 2, 2020 Evidentiary Hearing Transcript; *See Trombetta*, 467 U.S. at 488, 104 S.Ct. 2528.
[90] *See* September 2, 2020 Evidentiary Hearing Transcript
[91] *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337-38, 102 L.Ed.2d 281 (1988); *United States v. McNealy*, 625 F.3d 858, 869-70 (5th Cir. 2010).

destruction of evidence did not violate his due process rights. Accordingly, Defendant's Motion to Suppress must be denied.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Suppress DNA Evidence and Request for Evidentiary Hearing,[92] filed by defendant, Travis Lamont Murray, is **DENIED as to the suppression of the evidence**.

New Orleans, Louisiana, September 4, 2020.

*Wendy B. Vitter*
**WENDY B. VITTER**
**United States District Judge**

---

[92] R. Doc. 47.